## HOYE *vs* PENN.—June, 1828.

Where a creditor has a right to resort to the joint and several funds of two
debtors for the payment of his claim, the court of chancery has no au-
thority to limit that right, and to decree, that if the funds of one of the
debtors shall not be sufficient to discharge one-half the debt, the creditor
shall not look to the other debtor for the deficiency.

APPEAL from the Court of Chancery. On the 24th of March
1812, certain real estate, conveyed to *Charles Penn* and *Na-*

than *Waters*, was by the court of chancery decreed to be sold, or so much thereof as would raise the sum of £934 10 9½, with interest from the 1st of May 1802 till paid, and the costs of the suit, and the amount of the trustee's commission as far as the same could be estimated; and in determining on the quantity of each part to be first sold, the trustee should sell the land held by the heirs of *Penn*, in the first instance, to raise one-half of the debt, costs and commission, and should sell the land devised to *Nathan Waters*, in the first instance, to raise the other half, as far as that way might be found practicable; but with power, according to the decree, to raise the amount by a sale of the whole at a succeeding period, if it could be done, or in the first instance, if it should appear absolutely necessary. The report of the trustee stated, that a sale was made on the 23d of November 1818, and that he had sold the whole of the lands decreed to be sold, for the sum of $10,711 50, to various purchasers, and among others, part of *Snowden's Second Addition to his Manor*, containing 260 acres, to *James Ferree*, for $6,500. On the 26th of January 1819, the report of the trustee was confirmed. On the 26th of February 1819, the auditor made his report, and stated an account between the estate of *Penn* and *Waters*, and the trustee, in which the proceeds of the sale of each estate were applied to the payment of one-half of the complainant's claim, &c. and the balances respectively distributed to *Nathan Waters*, and the representatives of *Charles Penn*, deceased, viz. $1,306 04, to be distributed to the representatives of *Penn*, and $3,515 06, to *Waters*. The auditor's report was ratified by the chancellor, and the proceeds directed to be applied accordingly, &c. On the 25th of October 1823, *James Ferree*, one of the purchasers of part of the land sold by the trustee, with his sureties in the bond by him given for the purchase money, and the said trustee, filed their petition, in which they stated, that the bond so given by *Ferree* had been sued—judgments thereon obtained, and *fieri facias's* issued on the judgments. That *Ferree* had sold his right to the land to one of his sureties, and that the sheriff, being unable to find any other property of *Ferree* and his sureties, had levied the execution on the land purchased as aforesaid, and that if the land was sold at the sheriff's sale for

cash, the debt could not be raised, &c. They prayed that the land might be sold on a credit. The chancellor, by his order of the 25th of October 1823, stated that the trustee was authorised to suspend the sheriff's sale, as he was the legal creditor, and had control over the judgments, and could give such directions as should appear most advisable. That as the trustee, through whom the legal title must pass, believed it would be most advantageous for the property to be sold by the trustee, any sale which should be made, not prejudicial to the interest of the complainants, would be confirmed. The trustee afterwards reported, that he had suspended the executions on the judgments against *Ferree* and his sureties, and had himself, on the 7th of June 1824, sold the land formerly purchased by *Ferree*, to *John Hoye*, for $4,275. On the 9th of June 1824, the original complainants, to satisfy whose claims the original decree for a sale of the lands of *Penn* and *Waters* was passed, petitioned the chancellor, stating that the land decreed to be sold, as belonging to *Nathan Waters*, and resold, would be insufficient to pay one half of the complainants' debt, &c. and wishing, in that case, resort should be had to *Penn's* estate, and praying that no payments should be made to the representatives of *Penn* until the debts of the complainants should be paid. On this petition the chancellor ordered, that the trustee should make no further payments to the representatives of *Penn*, without the further order of the court, &c. On the 28th of February 1825, the Chancellor, *Bland*, passed the following order: In this case the lands of two debtors, *Waters* and *Penn*, have been sold under a decree of this court, to pay the proportion due from each of a joint debt. The proceeds of the sales, thus made, were reported to be more than sufficient to answer the whole demand. The securities for the purchase money were the lands themselves, and the purchasers with personal securities. The purchaser of *Waters's* land being, as is alleged, unable to pay, or insolvent, that land itself was again sent into the market, but owing to the general depreciation of such property, it has not sold for any thing like the original purchase money, or indeed a sufficiency to pay the proportion of the debt with which *Waters* was charged. But when this property was taken out of the hands of *Waters*, and sold, the parties

tacitly conceded, and the court solemnly adjudged, by con-firming the trustee's report, that a sufficiency of *Waters's* pro-perty had been taken to pay the debt due from him.    This debt, as to him, was then satisfied; for the property being un-der the control, or having been disposed of by the court, he, the original debtor, was not the guarantee of its sufficiency or safety, and consequently cannot be held liable for any loss that has happened to the fund, which has been so taken into the custody of the court.    To seize any more of *Waters's* pro-perty in such case would, therefore, be to make him pay his debt over again.    But it is said there is an unappropriated sur-plus of the proceeds of *Penn's* property in court, and that *Penn* and *Waters,* being jointly liable, this surplus may be applied to make good the ultimate deficiency in the proceeds of sale of *Waters's* property.    Now if it would be unjust, as we have seen, to take any more of *Waters's* property to make good this deficiency, it cannot be at all equitable to take *Penn's* property for that purpose, since *Penn* and *Waters,* as to this debt, being jointly liable, are as one and the same debt-or, and consequently *Penn's* property could not be touched on any principle which would not in like manner authorise the taking of *Waters's* property.    The confirmed report of the trustee shows that more than enough of *Penn's* property had been sold, and consequently he is a claimant to the amount of the surplus stated to have arisen from that sale, and is, in that respect, a creditor of the fund taken by the court, who must be permitted here to stand upon as high ground as any of those creditors who brought him here as a defendant, and whose claims the court has taken this his property to satisfy; and, therefore, if there should be any deficiency in collecting the proceeds of the property of *Penn,* which has been sold, such loss must be borne *pro rata;* that is, by *Penn* in pro-portion to his surplus, and by his creditors in proportion to their several established claims.    It may then be regarded as a general rule, that where the property of a debtor has been sold under a decree to pay his debts, and the report of the trustee, as finally ratified, shows that enough of the debtor's property has been taken and sold fully to satisfy such claim, the debt, as relates to the debtor, must be considered as satis-

fied. And no subsequent failure, from any cause whatever, in collecting the full amount of the proceeds of such sale, can justify the original creditor in again resorting to his debtor, and making a further seizure, after his property had been thus taken and sold. Therefore, it is ordered and adjudged, that the several receipts or assignments of the respective representatives of *Penn*, shall be and are hereby allowed in favour of the assignee claiming under them; and that the trustee apply the proceeds, as heretofore directed by an order made on the 29th of January 1823, ratifying the auditor's report. And further, that the petition of *Hoye* and others, be and the same is hereby dismissed. From which decree or order *Hoye*, one of the petitioners, appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and EARLE, MARTIN, ARCHER, and DORSEY, J. by

Boyle, for the Appellant, and by
Magruder, for the Appellee.

MARTIN, J. delivered the opinion of the Court. We cannot sanction the rule laid down by the chancellor in this case, and on which his last decree is founded.

The original decree directed, that the trustee should, *in the first instance*, sell so much of the lands of *Penn* as would be sufficient to raise the one half of the debt, and so much of the lands of *Waters* as would be necessary to make the other half; it further ordered, if a sufficient sum should not be produced by the first sale to discharge the debt, the trustee should proceed to sell the residue of the lands of both for that purpose. This course of proceeding was directed for the benefit of the debtors, as a matter of equity between them, but not to operate ultimately to the prejudice of the creditor. It was a joint debt due by *Penn* and *Waters*, each party was answerable for the whole; and we think it a clear position, that where a creditor has a right to resort to the joint and several funds of two debtors for the payment of his claim, the chancellor has no authority to limit that right, and decree, if the funds of one debtor shall not be sufficient to discharge the one half of the debt, the creditor shall not look to the other debtor for the

deficiency.    In this case all the lands of both *Penn & Waters*
were sold under the decree, and a fund, more than sufficient
to pay the debt, was produced by the sale.  Whether this sum
was made from the sale of *Penn's* lands, or *Water's* lands,
is a matter of no import to *Hoye.*   He is not interested in the
inquiry.    There is a fund in the hands of the trustee, or court
of chancery, from the sale of lands answerable for his debt,
and he is entitled to the whole amount of it, before the repre-
sentatives of either *Penn* or *Waters* can have a claim to any
part.

It has been contended that the sale made by the trustee, and
the report of the auditor founded on it, and directing how the
supposed surplus should be disposed of, having been confirm-
ed by the chancellor, *Hoye* is concluded by it—that he is now
too late—he ought to have made his objection before the con-
firmation, and while the subject was open for examination.
This would be requiring an impossibility of *Hoye.* *At the
time* the sale of the trustee and report of the auditor were
confirmed, it was not known any objection against the pro-
ceedings existed.    The inability of the purchaser of *Waters's*
land to pay, did not then appear, nor was it disclosed until
long after the confirmation.    No laches, therefore, can be im-
puted to him; and it would be a strange system *of equity*, to
deprive a man of his debt for not making a defence, at a time
when no defence existed.

DECREE REVERSED.